IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS CAVNER,<br><br>            Plaintiff,<br><br>     v.<br><br>ERICA WEINSTEIN, M.D.,<br><br>            Defendant. | NO. 1:07-cv-00184 GSA PC<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 55) |

Plaintiff is a civil detainee proceeding pro se in this civil rights action. The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). Pending before the Court is Defendant's motion for summary judgment. Plaintiff has opposed the motion.[1]

**I.     Procedural History**

This action was initiated by civil complaint filed on February 2, 2007. Plaintiff names as defendants Chief Medical Officer Dr. Erica Weinstein and Executive Director Thomas Voss, employees of the California Department of Mental Health at Coalinga State Hospital. The events that give rise to this lawsuit occurred while Plaintiff was housed at Coalinga. Plaintiff alleges that Defendant Weinstein "failed or refused, after repeated complaints by the Plaintiff, to provide any medical attention for documented medical problems that Plaintiff was experiencing." (Compl. p.

---

[1] On July 12, 2007, the Court issued and sent to Plaintiff the summary judgment notice required by Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (ECF No. 11.)

3.)

On May 18, 2007, an order was entered, finding that the complaint stated a cognizable claim for relief under 42 U.S.C. § 1983 against Defendants Weinstein and Voss for failure to provide Plaintiff with adequate medical treatment in violation of the Due Process Clause of the Fourteenth Amendment.  On February 11, 2011, an order was entered, dismissing Defendant Voss from this action on the ground that Plaintiff failed to provide information to enable the U.S. Marshal to effect service of process.  On April 1, 2011, Defendant Weinstein file the motion for summary judgment that is before the Court.  Plaintiff filed opposition to the motion on May 12, 2011, and Defendant filed a reply on May 26, 2011.

**II.    Claims**

Plaintiff specifically alleges that on October 27, 2005, he was received at Coalinga State Hospital from Atascadero State Hospital.  Plaintiff explained that he was "in need for a replacement denture, broken glasses, and also attention for an injury received as a result of the transportation officers placing the handcuffs to tight on his left wrist." (Compl. p. 6.)  Plaintiff was assured by "level of care staff" that he would be treated.  Id.  Plaintiff alleges that for "the next several months," he tried, without success, to receive treatment for his medical problems.

**A.    Dental Treatment**

Plaintiff alleges that he was not seen by a dentist until November 30, 2006.  Plaintiff alleges that he was seen on three separate occasions.  Impressions for dentures were taken and a broken denture was repaired and returned to Plaintiff.  The repaired dentures broke within a week. During that same week, the new dentures needed adjustment.  When Plaintiff attempted to get an appointment, the dental assistant told Plaintiff not to wear the dentures if they did not fit.

**B.    Optical Treatment**

Plaintiff was seen by the optometrist at Coalinga State Hospital.  The optometrist

2

determined that Plaintiff needed one contact lens to compensate for his vision disability. Plaintiff was advised that "the hospital" does not furnish contact lens, although Plaintiff was provided a contact lens at Atascadero.

### C. Wrist Treatment

Plaintiff alleges that his wrist was injured by transportation staff while being transported to Coalinga. Although Plaintiff alleges that the injury was not intentional, he does allege that he had to wait an unreasonable amount of time to receive treatment. Plaintiff was seen on three separate occasions. On the third visit, X-rays were taken. In November of 2006, after the third visit, Plaintiff was informed that he suffered a fractured wrist. Plaintiff was referred to an orthopedic surgeon, who advised Plaintiff that there was no break, and that he suffered an injury to the tendon. The doctor advised Plaintiff that it was too late to treat the injury. Plaintiff alleges that had he received timely treatment, he would not have suffered from this permanent condition.

## III. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [a]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its

pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson, 477 U.S. at 248; Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Matsushita, 475 U.S. at 588; County of Tuolumne v. Sonora Community Hosp., 263 F.3d 1148, 1154 (9th Cir. 2001).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a

4

whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**IV.     Analysis**

For claims brought pursuant to 42 U.S.C. § 1983, Plaintiff is required to show that Defendant Weinstein (1) acted under color of state law, and (2) committed conduct which deprived Plaintiff of a federal right. Hydrick v. Hunter, 500 F.3d 978, 987 (9th Cir. 2007). "A person deprives another of a constitutional right, where that person 'does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" Id. at 988 (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "[T]he 'requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. (quoting Johnson, at 743-44.) "Although there is no pure respondeat superior liability under § 1983, a supervisor may be held liable for the constitutional violations of subordinates '"if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."' Id. (quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)).

Defendant Weinstein supports the motion for summary judgment with her own declaration. Dr. Weinstein, currently a Staff Psychiatrist at Salinas Valley State Prison, declares as follows:

> From approximately September, 2005, through February, 2007, I held the position of (Acting) Medical Director at Coalinga State Hospital. As (Acting) Medical Director, my duties were as follows: Hiring Internists and Psychiatrists, organizing the Medical Staff Committees required by the Joint Commission for Accreditation of Hospitals as well as California state statutes, designing the structure for timely and accurate review of physicians' credentials, and participating in the Executive Director's weekly meeting to coordinate management activities with other departments in the hospital.
>
> As the (Acting) Medical Director, I rarely participated in direct

> patient care. On occasion, I would review treatment decisions concerning a specific patient. Most often, I would be requested to review specific treatment decisions only when there was a question about psychiatric care. There was a Chief of Medicine (an Internist) who supervised purely "medical care" issues having to do with physical problems.
>
> I have no knowledge of plaintiff as a resident of CHS during the time I was the (Acting) Medical Director at that facility. I have no knowledge or recollection of reviewing any medical record concerning plaintiff and was not consulted, nor did I provide any supervision of any kind or for any condition suffered by plaintiff. Specifically, I did not direct or supervise any treatments provided plaintiff while at CSH for prosthetic teeth, contact lenses, nor injuries to his wrists.
>
> On page 6 of the civil rights complaint, plaintiff alleges that on or about October 27, 2005, he was in need of replacement dentures, glasses, and attention for an injury he received as a result of transporting officers placing handcuffs too tightly on his left wrist. I do not recall having any involvement with decisions concerning plaintiff's dentures, glasses or care and treatment for an injury to his left wrist. In fact, I do not recall ever providing any direct care or treatment, nor did I participate in any medical decisions concerning plaintiff during the time I was the (Acting) Medical Director at Coalinga State Hospital.
>
> I resigned my position as (Acting) Medical Director at Coalinga State Hospital in February 2007. Since that time, I have had no responsibilities for the care and treatment of patients at Coalinga State Hospital and have had no responsibilities whatsoever to supervise or review the treatment decisions of medical providers rendering care to residents at Coalinga State Hospital.

(Weinstein Decl. ¶¶ 3-7.)

Defendant Weinstein argues that she did not have any knowledge of or personally participate in the alleged deprivation of Plaintiff's Constitutional rights in 2005. Defendant argues that Plaintiff alleges no facts indicating that she engaged in any specific behavior. The Court finds that Defendant's evidence establishes the lack of a triable issue of fact. Dr. Weinstein's declaration establishes that she had no knowledge of Plaintiff while acting as Medical Director at Coalinga State Hospital and did not at any time participate in direct patient care and did not participate in any aspect of Plaintiff's treatment or in any delay of treatment for

Plaintiff's dentures, contact lens or injuries to his wrist.  As noted above, Defendant Weinstein may only be held liable if there is evidence that she personally participated in, or knew of and failed to prevent, the injury to Plaintiff.  Defendant Weinstein's declaration establishes that she did not personally participate in Plaintiff's treatment, or that she was aware of any delay in treatment.  She has therefore met her burden on summary judgment.  The burden shifts to Plaintiff to come forward with evidence that establishes, beyond dispute, the existence of a triable issue of fact as to whether Dr. Weinstein personally participated in, or was aware of and failed to prevent, the injury to Plaintiff.

      Plaintiff's opposition, although not made under the penalty of perjury, is verified, and consists of four pages of argument.[2]  Plaintiff does not offer any evidence, and essentially restates the allegations of the complaint.  Plaintiff argues that when he filed a Patient's Rights Complaint, Dr. Weinstein became aware of his medical issues.  Plaintiff offers no evidence to support this conclusory argument.  Dr. Weinstein has come forward with evidence that she was not aware of Plaintiff's condition, or any delay in Plaintiff's treatment.  Plaintiff appears to argue that, as Acting Chief Medical Officer, she should have known.  Plaintiff fails to come forward with any evidence that she had actual knowledge of Plaintiff's treatment, or any delay in treatment.  Plaintiff argues that Defendant's duties included "ensuring that proper medical care was administered to all persons in the custody of and under the care of and treatment of the Hospital." (Opp'n, 3:11-12.)

      Plaintiff's arguments is based on Dr. Weinstein's capacity of Acting Chief Medical Officer.  Simply put, Plaintiff's central argument is that, as the Acting Chief Medical Officer, Dr. Weinstein is responsible for the medical care at Coalinga, and should have known about Plaintiff's allegations.  The law on this matter is clear.  There is no respondeat superior liability.  Defendant can not be held liable simply because she was in a supervisory capacity.  Taylor, 880

---

[2] Plaintiff's complaint is not verified or made under the penalty of perjury, and will therefore not be considered as an affidavit in support of summary judgment.  McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam); Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); F.R.C.P. 56(e).

F.2d at 1045. Plaintiff has failed to come forward with any evidence that Dr. Weinstein personally participated in, or knew of and failed to prevent, the alleged injuries to Plaintiff.

**V.     Conclusion**

Defendant Weinstein has met her burden on summary judgment by coming forward with evidence that she did not participate in Plaintiff's treatment. She also comes forward with evidence that she did not know of or fail to prevent any delay in Plaintiff's treatment. Plaintiff has failed in his burden to come forward with any evidence to the contrary. Plaintiff has failed to come forward with any evidence that establishes a triable issue of fact. Defendant's motion for summary judgment should therefore be granted.

Accordingly, IT IS HEREBY ORDERED that Defendant's motion for summary judgment is granted in favor of Defendant and against Plaintiff. Judgment to be entered accordingly. The Clerk is directed to close this case.

IT IS SO ORDERED.

Dated:   **November 8, 2011**                    /s/ **Gary S. Austin**
                                                                        UNITED STATES MAGISTRATE JUDGE